# THE SUPPLEE HARDWARE COMPANY

*v.*

# DRIGGS.

---

### EQUITY; CREDITOR'S BILLS.

Where one of two joint debtors removes from this District after the creation of the debt, so that process can not be served upon him in an action at law brought upon the debt, and the other is insolvent, so that a judgment if recovered against him can not be satisfied, and the only asset of the non-resident debtor here or elsewhere is an equitable interest in certain real estate in this District, a bill in equity is maintainable by the creditor to subject such equitable interest to the payment of the debt, without the debt being first reduced to judgment; *distinguishing* Hess *v.* Horton, 2 App. D. C. 81, and *following* Droop *v.* Ridenour, 9 Id. 95.

No. 824. Submitted October 6, 1898. Decided October 18, 1898.

HEARING on an appeal by the complainant from a decree sustaining a demurrer to and dismissing a creditor's bill. *Reversed.*

The COURT in its opinion stated the case as follows:

The appellant, the Supplee Hardware Company, is a corporation of the State of West Virginia, doing business in Philadelphia, Pa., and appeals from a decree dismissing its bill, for want of jurisdiction in equity.

The bill alleges that on January 20, 1897, the defendant, Louis L. Driggs, and one John Woerner, jr., were partners, doing business in the District of Columbia under the name of the Enterprise Cycle Company, and as such became indebted to the plaintiff in the sum of $592.63, for which they executed notes, with others, and in the further sum of $2,275.65 on account of goods consigned by plaintiff to them and sold on its account.

Actions at law were instituted in the District aforesaid on October 15, 1897, on the said notes and account respectively. Process in said suits was duly issued, but could not be served upon the defendant Driggs, because prior to their institution the partnership had been dissolved, the assets disposed of, and said Driggs had removed to the State of New York, where he has continued to reside.

It is further alleged that said John Woerner, jr., "is insolvent and has no property out of which a judgment could be made, and the defendant Driggs has no property here, in New York, or elsewhere subject to legal process, by way of attachment or otherwise, and to that extent is insolvent also; nor has he any property anywhere that can be reached by the aid of a court of equity, except an equitable interest in certain real estate lying and being in the District of Columbia and hereinafter described."

This is followed by a description of certain lands that had been conveyed to trustees by said Driggs, to secure certain indebtedness. The validity of these conveyances is not attacked, but the trustees and beneficiaries therein are called upon to disclose the several sums actually due, and sale of the equitable interest of said Driggs in the said lands is prayed for the satisfaction of complainant's demands.

13 Ct. App.—19

Driggs appeared, without service of process, and entered a demurrer upon which the bill was dismissed.

*Messrs. Ralston & Siddons* for the appellant:

1. The question presented to this court is whether a creditor who has extended credit to a person engaged in business in this District, whose only property is here, and who, after the maturity of the credit, closes his business and leaves the jurisdiction, must first obtain a judgment against the debtor wherever he can be found, issue execution, and have the same returned *"nulla bona,"* before resorting to a bill in equity to reach the equitable estate of such debtor lying and being in this jurisdiction and being the only property from which his claim can be satisfied. While the general rule undoubtedly requires a judgment at law and an execution issued and returned *"nulla bona,"* before a court of will entertain a bill to subject the equitable estate or property of a debtor to the payment of his debts, there are well-recognized and necessary exceptions to the rule. 4 Am. & Eng. Encyc. L. 574 *et seq.*; Bispham, Equity, Sec. 527; Pomeroy, Equity Jurisp., Sec. 1415; Wait, Fraud. Convey., Sec. 84; Bump, Fraud. Convey., Sec. 516; Freeman, Executions, Sec. 427; *Offutt* v. *King,* 1 MacA. 312; *Dunn* v. *Murt,* 4 Mackey, 289; *Mehler* v. *Cornwell,* 3 App. D. C. 92; *Scott* v. *McMillen,* 1 Littell, 302; *Curd* v. *Letcher,* 3 J. J. Marsh. 443; *Anderson* v. *Bradford,* 5 Id. 69; *Peay* v. *Graham,* 10 Grattan, 149; *Kipper* v. *Glancey,* 2 Blackf. 356; *O'Brien* v. *Coulter,* 2 Blackf. 421; *Quarl* v. *Abbott,* 102 Ind. 232; *Bank* v. *Wetmore,* 124 N. Y. 241; *Brittain* v. *Quiet,* 1 Jones' Eq. 328; *Farrar* v. *Haselden,* 9 Rich. Eq. 331; *Pendleton* v. *Perkins,* 49 Mo. 565; *Bank* v. *Paine,* 13 R. I. 592; *Ginn* v. *Brown,* 14 R. I. 524; *Terry* v. *Anderson,* 95 U. S. 636; *Smith* v. *Railroad Co.,* 99 U. S. 401; *Jones* v. *Green,* 1 Wall. 330; *Case* v. *Beauregard,* 101 U. S. 690; *Tube Works* v. *Ballou,* 146 U. S. 517. This case falls within the exception that recognizes the absence of the debtor from the jurisdiction as excusing the necessity of a

judgment before proceeding in equity. See *Droop* v. *Ridenour*, 9 App. D. C. 95.

2. The allegations of the bill make out a *prima facie* case for the equitable relief we seek. It is shown that it is impossible to obtain a judgment against Driggs in any court in this jurisdiction; and this fact, together with the further facts that the debt sued upon was incurred here by the appellee, while conducting here the business in and about which such debt was incurred, and that the only property subject to the payment of such debt is located here, certainly furnish the grounds for the interposition of a court of equity. *Tube Works Co.* v. *Ballou*, 146 U. S. 517.

*Mr. Alexander H. Bell* and *Mr. Francis H. Stephens* for the appellee:

1. It is a rule, long settled, and recently repeated by the Supreme Court, that a creditor has no standing in equity to attack the acts of his debtor as fraudulent until he has established his demand at law. *Day* v. *Washburn*, 24 How. 352; *Adler* v. *Fenton*, 24 How. 407; *Scott* v. *Neely*, 140 U. S. 106; *Putney* v. *Whitmire*, 66 F. R. 385; *Moran* v. *Dawes*, Hop. Ch. 305; *Ishmael* v. *Parker*, 13 Ill. 325; 5 Ency. Pl. & Pr. 468; *Cates* v. *Allen*, 149 U. S. 451 (457).

Judgment is necessary to establish "the measure of the demand of the complainant for which he seeks satisfaction in chancery." *Smith* v. *Railroad*, 99 U. S. 398; *Oakley* v. *Pound*, 14 N. J. Eq. 178. Where there are several judgment debtors the remedy at law must be exhausted against all before proceeding in equity against one. *Voorhees* v. *Howard*, 4 Keyes, 383; *Field* v. *Hunt*, 22 How. Pr. 329 (333); 5 Encyc. Pl. & Pr. 463, and cases cited.

2. The appellee is entitled to a trial by jury, as guaranteed by the Seventh Amendment to the Constitution. This point was emphasized by the court below in sustaining the demurrer, and it is submitted that the cases of *Cates* v. *Allen* and *Scott* v. *Neely* are conclusive upon this point. The right·

to a trial by jury is not satisfied by issues sent out of chancery. *Cates* v. *Allen*, 149 U. S. 451 (457); *Scott* v. *Neely*, 140 U. S. 106; *Whitehead* v. *Shattuck*, 138 U. S. 146; *Buzard* v. *Houston*, 119 U. S. 347; *Hess* v. *Horton*, 2 App. D. C. 81.

The sole ground on which the complainant can maintain his bill, if at all, is the absence from the jurisdiction of the defendant. There is no charge of insolvency against the latter, unless the allegation that he has no property subject to execution at law can be so considered. If, indeed, the defendant were insolvent, it seems that fact by itself would not entitle complainant to equitable relief. 5 Encyc. Pl. & Pr. 518.

Mr. Justice SHEPARD delivered the opinion of the Court:

The particular facts of this case distinguish it, on the one hand, from that of *Hess* v. *Horton*, 2 App. D. C. 81, which was governed by the familiar general rule, that to maintain a creditor's bill there must first have been a judgment at law with fruitless execution; and, on the other hand, bring it within the exception established in *Droop* v. *Ridenour*, 9 App. D. C. 95.

In *Hess* v. *Horton*, neither party had lived in the District of Columbia, nor had the cause of action arisen therein. Complainant lived in Maryland and the defendant in New York. The debt had never been reduced to judgment, and the sole ground upon which the jurisdiction of a court of equity of the District of Columbia was invoked was, that the defendant had property in the District, which he had conveyed with the intent to defraud his creditors. As was said in the opinion approving the dismissal of the bill:

" For aught that appears in this bill, defendant Horton may have property subject to execution in the State of New York, where he resides, more than sufficient to satisfy complainant's demand. The complainant, who resides in Maryland, could as easily have resorted to the courts of the place of defendant's residence, where he may have property sub

ject to execution, as to the courts of this District, where defendant once had property which, it is alleged, has been conveyed by him without consideration and to defraud his creditors."

In *Droop* v. *Ridenour*, the facts were quite different. The defendant had contracted the debt whilst a resident of the District of Columbia. He had no property other than an equitable interest in certain real estate therein. That interest he conveyed to his wife, who lived elsewhere at the time. He then absconded, and his place of concealment was unknown. The debt had not been reduced to judgment, though suit had been instituted thereon, on which service could not be had for the reason aforesaid. The jurisdiction of equity was maintained because there was no remedy at law. The exigency of the situation, the complete failure of justice that would necessarily follow the denial of relief in equity, took the case out of the operation of the general rule. As was said by the Chief Justice, in delivering the opinion of the court in that case:

"There are many cases where the demands of justice, and the inadequacy of the ordinary process of law, make it necessary that equity should interpose, rather than that the creditor should be wholly without remedy or means of redress. All that is required of the complainant is that he has done all that he could do to make effective the remedy at law, or, in other words, that he has exhausted his legal remedies, or shown that the remedy at law is wholly inadequate, or that the ordinary legal remedies do not apply to the case, and hence he is without a plain, adequate and complete remedy at law."

Appellee contends that there is a material difference between that case and this, because, in that, the defendant had stolen away from his residence in the District, and remained in concealment for the purpose of evading the process of any court of law whatsoever; whilst, in this, he had openly removed to New York, in pursuance of an ordinary right

and was within reach of the process of the courts of that State. In that case no suit at law could be made effective in any jurisdiction, whereas in this, the claim could readily be prosecuted to judgment in the courts of the State of New York. .

From one point of view, this difference is indeed material, and would bring the case at bar within the scope of the decision in *Hess* v. *Horton, supra*; but it is made nugatory by the allegation of the bill that the defendant has no property in the State of New York, of any kind or description, from which satisfaction of a judgment there could be obtained. The only property that he has anywhere is the equitable estate in certain real property in the District of Columbia. What benefit would complainant obtain from a judgment in New York of which no satisfaction could possibly be had ? Of what advantage would that judgment be in this jurisdiction? Execution could not be issued upon it. He would be compelled to bring an action at law upon it, service of process in which could not be obtained any more than in his pending actions of *assumpsit*.

To obtain satisfaction of his debt he would still be compelled to seek the relief of a court of equity. He would be no nearer the end of his remedy than he was when he filed the present bill. It is true that such a judgment would be conclusive of material defenses that might be litigated in the pending actions of *assumpsit*; but still it would not be an exhaustion of legal remedies in this jurisdiction.

Consequently, the maintenance of a creditor's bill upon such a judgment would likewise raise up an exception to the same general rule of jurisdiction that has been invoked to bar relief in this proceeding.

Equity, wherever it can, looks to the substantial conditions respecting which its remedies are sought, without regard to the technical forms in which they may be involved.

To compel the complainant to first recover judgment in the State of New York, where there is no possibility of ob-

taining its satisfaction, simply because the defendant may reside or can be served with process there, would be to require the performance of an idle ceremony, entailing expense, vexation and delay for no practical purpose.

The jurisdiction of equity ought not to depend upon such formalities. If there be no other practical remedy for the infraction or deprivation of an apparently plain legal right, equity will give one. Its courts would otherwise fail of their duty and prove unfaithful to their fundamental maxim, that "where there is a right there is a remedy," the operation of which, in cases of this nature, is only restrained by the existence of a plain, adequate and complete remedy at law.

The decree will be reversed, with costs to the appellant, and the cause remanded with directions to overrule the demurrer. It is so ordered.                              *Reversed.*